## CONTINUATION IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Continuation in support of an application for a search warrant for information associated with one Facebook username that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This Continuation is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the username https://www.facebook.com/devin.lewis.566.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been since July 1, 1990. I have received specialized training at the Federal Law Enforcement Training Center, Glynco, Georgia. ATF Agents are authorized to investigate violations found in Title 18 and Title 21 of the United States Code.

3. The facts in this Continuation come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Continuation is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this Continuation, there is probable cause to believe that violations of Title 18 U.S.C. § 922 and Title 21 U.S.C. § 841 have been committed by Devin Devon-Moore LEWIS. There is also probable

cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. On March 4, 2018, Officers of the Kalamazoo Department of Public Safety (KDPS) arrested Devin Devon-Moore LEWIS for his possession of 2.03 grams of Methamphetamine. LEWIS was subsequently convicted for this felony possession of Methamphetamine on September 4, 2018 (9th Circuit Court of Kalamazoo Case Number 2018-0896-FH).

6. On October 9, 2018, KDPS officers arrested LEWIS in possession a loaded Glock Model 26 9mm semiautomatic handgun, serial number BGBW688 (hereafter, the "Glock handgun"). Arresting officers also found LEWIS in possession of 1.38 net grams of methamphetamine.

7. The grand jury returned an indictment against LEWIS for these incident. *United States v. Lewis*, No. 1:18-CR-242 (J. Quist). The case is currently pending trial.

8. The Glock handgun was listed as a stolen firearm, resulting from a robbery that occurred on September 29, 2018 in Portage, Michigan. The victim of the robbery told me and other officers working with me that on September 29, 2018, two men accosted him as he was unlocking his garage and forced him inside at gunpoint. The victim identified one of the men, the one holding a gun on him, as LEWIS. During the robbery, LEWIS and the other robber made off with the Glock handgun as well as other property.

9. The robbery victim told me that prior to the robbery, he left his house to sell THC-laced "vaping cartridges." The robbery occurred when he returned from this sale, which on this occasion was unsuccessful. During the robbery, the two men demanded to know where the

victim kept his marijuana.  Among the items LEWIS and his companion stole on September 29, 2018 were several ounces of marijuana.

10. My training and experience leads me to conclude that LEWIS and his companion knew their victim sold marijuana, was aware of his movements, and therefore likely had some connection with him.  From my training and experience, I know that it is common for thieves to set up bogus meetings to purchase drugs as a pretext for robbing the seller.  I am also aware that people involved in the drug trade use a variety of social media platforms to communicate, including Facebook.

11. On January 09, 2019, I reviewed the contents of Devin LEWIS's Facebook account (devin.lewis.556).  Available on the publicly-accessible domain of this Facebook account is a video posted on March 17, 2018, during which LEWIS video-recorded investigators of the Kalamazoo Valley Enforcement Team conducting an arrest or search warrant on an unknown individual or address.  LEWIS is clear about his dislike for law enforcement and that all officers present are fortunate LEWIS earlier rid himself (for $300.00) of his means to eliminate them.  I interpret this to mean that LEWIS is stating that he sold a gun for $300.  The video further captured a number of KVET unmarked police vehicles. At the conclusion of the video, the recording device is turned upwards and LEWIS himself is visible apparently holding this same recording device.

12. I further observed on LEWIS' publicly visible Facebook page a post contemporaneous with the aforementioned video as follows:



13. On March 18, 2019, a subject identified by name as Devin Lewis posts a follow up message to the aforementioned video in which he refers to himself as a Prisoner of War in the United States "War on Drugs".



14. On January 09, 2018, I sent a preservation request to Facebook for the devin.lewis.566 account. Based on my knowledge and experience, I know that ordinarily, information that a Facebook account holder posts on the account will remain there until the account holder removes it. Based on my training and experience I also know that drug traffickers and drug purchasers utilize Facebook to arrange and negotiate the sale of controlled substances. Additionally traffickers and purchasers will commonly post photographs of controlled substances, drug paraphernalia, firearms and cash proceeds from drug sales. For these reasons, I submit that LEWIS may have posted information on this account that is relevant to this investigation.

**FACEBOOK BACKGROUND**

15. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

16. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

17. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook

users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

19. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

21. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on

Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

22.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

24.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

27. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

28. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

29. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

30. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

31. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a

Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

32.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

33.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which

users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

34. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

35. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

36. Based on the forgoing, I request that the Court issue the proposed search warrant.

37. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.